RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0237P (6th Cir.)
File Name: 03a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DINNELL C. CARTWRIGHT, as
Personal Representative of the
Estate of TERRY L.
CARTWRIGHT, Deceased,
    *Plaintiff-Appellee,*

    *v.*

CITY OF MARINE CITY; JAMES
VANDERMEULEN and
TIMOTHY ROCK, Marine City
Police Officers,
    *Defendants-Appellants.*

No. 02-1728

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73730—Julian A. Cook, Jr., District Judge.

Argued: May 7, 2003

Decided and Filed: July 21, 2003

Before: SUHRHEINRICH and COLE, Circuit Judges;
CARR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Julie O'Connor, O'CONNOR, DeGRAZIA &
TAMM, Bloomfield Hills, Michigan, for Appellant.
Wolfgang Mueller, OLSMAN, MUELLER & JAMES,
Berkley, Michigan, for Appellee. **ON BRIEF:** Julie
O'Connor, O'CONNOR, DeGRAZIA & TAMM, Bloomfield
Hills, Michigan, for Appellant. Wolfgang Mueller,
OLSMAN, MUELLER & JAMES, Berkley, Michigan, for
Appellee.

_____

## OPINION

_____

JAMES G. CARR, District Judge. Dinnell C. Cartwright,
as personal representative of the estate of the late Terry L.
Cartwright, sued the City of Marine City, Michigan ("City"),
and two of its police officers for failing to prevent the death
of Terry Cartwright, a pedestrian who was struck and killed
by a truck. The district court denied the defendants' motion
for summary judgment and claim of qualified immunity. We
hold that the plaintiff has not made out a constitutional
violation against the City or the officers. We therefore
**REVERSE** the district court's denial of qualified immunity,
and **REMAND** the case for dismissal.

_____

[*] The Honorable James G. Carr, United States District Judge for the
Northern District of Ohio, sitting by designation.

## I.   BACKGROUND

The tragic facts of this case are not in dispute. On October 27, 1998, at around midnight, Terry Cartwright was walking on the foggy, unlit shoulder of 26 Mile Road in St. Clair County, Michigan. Defendants James Vandermeulen and Timothy Rock, police officers for Marine City, Michigan, saw him on the side of the road while they were riding in their patrol car to the Speedy-Q convenience store for a prisoner pickup. The officers stopped and asked Cartwright where he was going. Cartwright said he was traveling to Yale, Michigan. The officers offered him a ride to Port Huron, Michigan, and Cartwright accepted. He got into the back of the patrol car, and the three drove for eight or nine minutes to reach the store.

During the trip, the officers asked Cartwright for identification. Cartwright produced an identification card. The officers noticed that Cartwright smelled of alcohol, but did not notice other signs of intoxication, such as bloodshot eyes or slurred speech.

At the convenience store, the officers took custody of their prisoner. The officers then told Cartwright that they could not put the prisoner in the back seat with Cartwright unless Cartwright consented to a pat-down search. Cartwright refused to allow the pat-down search, and told the officers that he did not want a ride. The officers left Cartwright at the store, and drove away.

According to store clerk John Beaufait, Cartwright entered the store sometime between midnight and 12:30 a.m., bought a soft drink, and left. Cartwright returned sometime between 1 a.m. and 1:30 a.m. and tried to buy a beer. Beaufait refused to sell him the beer because he looked haggard and confused, and slurred his speech. Beaufait gave Cartwright a cup of coffee, and Cartwright stayed in the store for about twenty or thirty minutes, drinking the coffee and talking to Beaufait. Cartwright then left the store.

Approximately one hour later, at about 2:25 a.m., Cartwright was run over by a truck and killed as he lay in the middle of 26 Mile Road, about two miles from the store. The autopsy report determined that Cartwright's blood alcohol level at the time of his death was .27 percent. A forensic pathologist determined that Cartwright's blood alcohol level at about 12:15 a.m. would have been in excess of .30 percent. At that level, Cartwright's speech would have been slurred, his eyes would have been red, and he would have had trouble standing.

Cartwright's wife, Dinnell Cartwright, representing his estate, initiated this action against the City of Marine City, Rock, and Vandermeulen. She alleges that the police officers violated Terry Cartwright's substantive due process rights under 42 U.S.C. § 1983, and that the City is liable for failure to train and supervise its police officers. Plaintiff also asserted a claim of gross negligence and a violation of Mich. Comp. Laws § 333.6501 (2003). The district court denied summary judgment on the constitutional claim, and also denied summary judgment on the basis of qualified immunity. The defendants appeal.

## II.   ANALYSIS

### A.   Jurisdiction

The district court had jurisdiction under 28 U.S.C § 1331. This Court has jurisdiction over the defendants' appeal of the district court's denial of qualified immunity pursuant to 28 U.S.C. § 1291 and *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is appealable under 28 U.S.C. § 1291, though not a final judgment).

The district court denied the defendants' motion for summary judgment based on its conclusion that there were genuine issues of material fact for trial, never mentioning

qualified immunity. The order still is appealable, however, because "[e]ven when the district court denies summary judgment without stating its reasons for doing so, a court of appeals may decide the legal question underlying the qualified immunity defense." *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995) (*citing Johnson v. Jones*, 515 U.S. 304, 318-19 (1995); *see also Klein v. Long*, 275 F.3d 544, 549 (6th Cir. 2001) (*quoting Shehee v. Luttrell*, 199 F.3d 295, 299 (6th cir. 1999) (noting that as long as "a defendant seeking qualified immunity [is] willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case" the defendant is entitled to an interlocutory appeal to show that "the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a prima facie violation of clear constitutional law").

### B.   Standard of Review

We review de novo a district court's denial of qualified immunity. *Klein*, 275 F.3d at 550 (citation omitted).

### C.   Qualified Immunity

The plaintiff asserts that the defendant officers and the City violated Terry Cartwright's substantive due process rights. Because a constitutional violation against a city requires, but is not made out by, an antecedent violation on the part of its officials, *see Bukowski v. City of Akron*, 326 F.3d 702, 708 (6th Cir. 2003), we start with the roles played by defendants Rock and Vandermeulen.

As governmental officials acting within the scope of their duty, Rock and Vandermeulen can claim qualified immunity. *Id.* Qualified immunity is an affirmative defense shielding governmental officials from liability as long as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The

plaintiff has the burden of establishing that a defendant is not entitled to qualified immunity. *Rich v. City of Mayfield Hts.*, 955 F.2d 1092, 1095 (6th Cir. 1992).

The qualified-immunity inquiry has two principal parts. First, the court must determine "whether the plaintiff has shown a violation of a constitutionally protected right." *Davis v. Brady*, 143 F.3d 1021, 1024 (6th Cir. 1998). Then, the court must discern whether the right is so "clearly established" that a "reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We start with the question of whether the officers violated Terry Cartwright's due-process rights at all. Because there was no violation, we do not reach the clearly-established prong.

### D.   Section 1983

Plaintiff seeks to hold the government officials responsible, under § 1983, for the act of private violence that Cartwright suffered when he was struck and killed by a motorist. To succeed on a § 1983 claim, plaintiff must show defendants: 1) acted under color of state law; and 2) deprived plaintiff's decedent of his rights under the United States Constitution. *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002) (citations omitted).

#### 1.   Color of State Law

Defendants do not contest that they were acting under state law.

#### 2.   Deprivation of Rights

Plaintiff alleges that defendants violated Cartwright's constitutional right to substantive due process by failing to take him into custody. In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197 (1989), the Supreme Court noted that "a State's failure to protect an

individual against private violence simply does not constitute a violation of the Due Process Clause." The Court in *DeShaney* held that the defendant social services department was not liable for the injuries a father inflicted on his son, even though the department had a responsibility to prevent child abuse, and had taken temporary custody of the child before returning him to his father. While the Court in *DeShaney* denied relief, it explained that it was not considering a case where a person suffered injuries either while in state custody or because of state acts that made him more vulnerable to private violence. *Id.* at 201. Instead, *DeShaney* involved a situation where a state's involvement placed the victim "in no worse position than that in which he would have been had it not acted at all." *Id.*

This Court has recognized both of these exceptions to the general rule announced in *DeShaney*. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910 (6th Cir. 1995). *See Stemler v. City of Florence*, 126 F.3d 856, 867-68 (6th Cir. 1997) (holding that an injury suffered while in state custody may be violation of Due Process Clause); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) (holding that there may be liability under Due Process Clause where state's affirmative acts either create or increase risk of private violence). Plaintiff asserts that both of these exceptions apply to create liability under the Due Process Clause.

### a. Special Relationship

Plaintiff argues that her claim should be treated under the custodial exception to *DeShaney*. This Court recently defined "custody" as the "intentional application of physical force and show of authority made with the intent of acquiring physical control." *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002). Under that standard, the defendant officers did not take Cartwright into custody. In fact, as in *Bukowski*, Plaintiff's grievance is that the officers should have taken Cartwright into custody, but did not. *See Bukowski*, 326 F.3d at 709 n.1 (noting that the plaintiff cannot argue liability

under custodial exception to *DeShaney* where her argument is that the city harmed her by failing to take her into custody).

Plaintiff argues that a special relationship existed between Cartwright and the officers, because the officers had an affirmative duty to help plaintiff, and because such duty was created by state statute.

### i. Relationship Through Custody

The state has a duty to protect a citizen "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *DeShaney*, 489 U.S. at 200.

The relationship only arises "when the state restrains an individual," *Sargi*, 70 F.3d at 911, and in this case, decedent was never in custody. The defendants did not suspect Cartwright was guilty of wrongdoing; they merely offered to give him a ride. When Cartwright refused to consent to a pat-down search, which the officers requested only when the transfer prisoner was ready to join him in the back seat of the patrol car, the officers and Cartwright parted company.

Also, Cartwright's inebriation was not "imposed or created" by the state. This Court has held that this fact alone requires a finding that the defendants did not owe the decedent an affirmative duty, because there was no special relationship. *Sargi*, 70 F.3d at 911 (holding that no special relationship existed between the state and a child who died of heart failure on a school bus who was not in custody, and whose condition was not imposed or created by the state); *see also Weeks v. Portgate County Executive Offices*, 235 F.3d 275, 277-78 (6th Cir. 2000) (holding that deputy sheriff had no special relationship with an assault victim who approached him, bleeding and staggering, and asked for help; though victim subsequently was beaten to death; officer had no

affirmative duty to take decedent into protective custody or call for medical assistance).

### ii.  Relationship Through Statute

Plaintiff argues that defendants' alleged violation of Section 333.6501 of the Michigan Compiled Laws constitutes proof of a special relationship.

The statute provides, in pertinent part:

> An individual who appears to be incapacitated in a public place shall be taken into protective custody by a law enforcement officer and taken to an approved service program, or to an emergency medical service, or to a transfer facility pursuant to subsection (4) for subsequent transportation to an approved service program or emergency medical service.

MICH. COMP. LAWS § 333.6501(1) (2001).

This argument fails in light of this Court's opinion in *Jones v. Union County, Tennessee*, 296 F.3d 417, 430 (6th Cir. 2002), in which we held that a violation of a state statute does not create a liberty interest or property right under the Due Process Clause. Even if the defendants should have taken decedent into custody under state law, their failure to do so does not transform that error into a constitutional wrong.

### b.  State-Created Danger

Plaintiff argues, alternatively, that defendants are liable under the state-created danger exception, under which state officials may be found to have violated the substantive due process rights of people not within their custody "when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way." *Ewolski*, 287 F.3d at 509; *see also Kallstrom*, 136 F.3d at 1066.

To show a state-created danger, plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff. *Kallstrom*, 136 F.3d at 1066.

### i.  Affirmative Act

In *Kallstrom*, this court held that releasing private information in police officers' personnel files constituted an affirmative act under the state-created danger theory. 136 F.3d at 1067. By contrast, failure to act is not an affirmative act under the state-created danger theory. *See, e.g., Sargi*, 70 F.3d at 912-13 (failing to provide bus drivers with a plan for managing emergencies, taking seizure victim home without medical intervention, failing to maintain communication devices on a bus, and failing to tell the bus driver of the student's medical condition were not affirmative acts); *Gazette*, 41 F.3d at 1065 (failing to rescue kidnap victim and lying about the case to the victim's family were not affirmative acts); *Reed v. Knox County Dep't of Human Servs.*, 968 F. Supp. 1212, 1220-22 (S.D. Ohio 1997) (failing to inform family of foster child's violent history, placing child in home, and failing to remove child were not affirmative acts).

The facts of this case indicate, at most, a failure to act; they do not rise to the level of affirmative acts which created or increased the risk that the plaintiff would be exposed to an act of violence by a third party. Defendant officers took plaintiff from a place of great danger: the shoulder of a dark, foggy, two-lane highway. They placed him in a place of lesser danger: the parking lot of an open convenience store, where telephones, restrooms, and food and drink were available to him.

Plaintiff argues that the convenience store was a place of greater danger, because, she alleges, there was more traffic near the store. No reasonable jury could find that the parking lot was more dangerous than the shoulder of 26 Mile Road. Plaintiff also argues that the police invited Cartwright to a safe place – the back seat of the patrol car – and then released him at a more dangerous place – the convenience store parking lot. This is not the proper comparison. The question is not whether the victim was safer *during* the state action, but whether he was safer *before* the state action than he was *after* it. *See DeShaney*, 489 U.S. at 201 ("That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been in had it not acted at all.").

Plaintiff cannot show that defendant officers created or increased the risk that Cartwright would be struck by a vehicle. Defendants did not commit an affirmative act under the state-created danger theory.

Because plaintiff has failed to allege facts from which a jury could find that defendants violated Cartwright's due process rights, under both the theory of an affirmative duty to protect him and the theory of a state-created danger, defendants Vandermeulen and Rock, and, by extension, the City, are entitled to qualified immunity. Consequently, plaintiff's claims under § 1983, as well as her state-law claims, must fail.

### E.   Unavoidable Liability

This Court, in *Bukowski*, recently described the "unavoidable liability" problem confronting state officers when it is alleged that they should have taken someone into protective custody. In that case, a woman and her parents sued defendant City of Akron and its officials for failing to take the woman, who had a mental disability, into protective custody. The woman had disappeared from her home and had

traveled to Akron, Ohio, to meet a man with whom she had talked online. 326 F.3d at 705. That man raped her. *Id.* Akron police found the woman and brought her to the station, where she told the police and a victim's advocate that the man was her "boyfriend" and asked to be returned to his home. She did not tell anyone that he had harmed her. *Id.* at 706. The officials perceived her mental disability but did not believe she was incapacitated, because she had traveled by bus and taxi to Akron and had the ability to read and write well enough to conduct online conversations. *Id.* After an Akron police legal advisor told the police that they had no legal authority to detain her as a juvenile or as a person with a mental illness, the police told her that she could wait for her parents at the police station or at a shelter. *Id.* When she asked to be returned to the man, the police complied, returning her to his home, where he raped her. *Id.* He was convicted of his crimes and imprisoned. *Id.* at 708.

This court found that the police did not violate the victim's substantive due process rights. *Id.* at 711. We also noted that if the Akron police had decided to detain her at the police station instead of returning her to Hall's residence, "they may have faced another lawsuit based on charges of false imprisonment." *Id.* at 711-12 (*citing Adams v. Metiva*, 31 F.3d 375, 383 (6th Cir. 1994) ("[I]f there is no reason to further detain a person, he cannot lawfully be detained against his will.")).

The facts of this case presented a similar Catch-22 for officers Vandermeulen and Rock. If they had decided to take Cartwright into protective custody under § 333.6501 of Michigan Compiled Laws, they, too, may have faced another lawsuit based on charges of false imprisonment, on the theory that Cartwright was not really "incapacitated" and the officers

had no legal authority to detain him under the statute.[1] Plaintiff has not proposed any other grounds on which the officers could have taken Cartwright into custody. Public intoxication is not a civil or criminal offense in Michigan. MICH. COMP. LAWS § 333.6523(1) (2001).

Cartwright refused to allow a pat-down search when the officers asked him if he would permit it. The state statute gives officers the right to conduct a "pat-down" search of a person taken into protective custody. MICH. COMP. LAWS § 333.6501(2) (2001). If, however, the officers had done so, Cartwright also could have claimed that the officers had no legal authority to search him. Plaintiff has not proposed any other grounds upon which the officers could have conducted a pat-down search over Cartwright's objection before allowing him to ride in the back seat of the patrol car with the prisoner.

Defendants Vandermeulen and Rock were not aware of facts suggesting that a substantial risk of serious harm existed, given the knowledge they had at the time they decided to let Cartwright go. Also, as a matter of public policy, if this Court were to deny defendants' claim of qualified immunity, it would discourage police officers from trying to aid citizens in need. An officer's decision to stop and pick up a citizen walking along a dark highway should not result in liability, unless an exception to the doctrine of qualified immunity applies.

For these reasons, we hold that officers Vandermeulen and Rock should have been granted qualified immunity. Because the City can only be held liable if there is a showing of

---

[1] For purposes of § 333.6501, "incapacitated" means that "an individual, as a result of the use of alcohol, is unconscious or has his or her mental or physical functioning so impaired that he or she either poses an immediate and substantial danger to his or her own health and safety or is endangering the health and safety of the public." MICH. COMP. LAWS § 333.6104(3) (2001).

liability on the part of its officials, the determination that the officers did not violate Cartwright's constitutional rights resolves plaintiff's claim against the City as well. *See Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) (noting that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well").

### III. CONCLUSION

In summary, we hold that plaintiff cannot show any constitutional violation by City of Marine City police officers or by the City itself. As a result, we REVERSE the district court's denial of qualified immunity. We REMAND the case to the district court so that it may dismiss the case.