**Mary SIMMONS, Personal Representative of the Estate of Shala Enwana Gee Simmons, Deceased, Plaintiff,**

v.

**CITY OF INKSTER, Defendant.**

No. 03–72318.

United States District Court,
E.D. Michigan,
Southern Division.

June 9, 2004.

John M. Peters, Rochester Hills, MI, for Plaintiff.

Edward D. Plato, Farmington Hills, MI, for Defendant.

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [19] BROUGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

EDMUNDS, District Judge.

This matter comes before the Court on Defendant City of Inkster's motion to dismiss, brought under Fed.R.Civ.P. 12(b)(6), arguing that Plaintiff cannot state a claim for relief under the Fourth and Fourteenth Amendments of the United States Constitution and thus her claims under 42 U.S.C. § 1983 must be dismissed. For the reasons stated below, this Court GRANTS Defendant's motion.

## I. Facts

This case arises out of shooting death of Shala Enwana Gee Simmons by her husband, Dwayne Gee, who then took his own life. The following facts are alleged in Plaintiff's complaint.[1]

Plaintiff alleges that the following events took place on November 18, 2001.[2] Shala

---

1. Plaintiff is the personal representative of the Estate of Shala Enwana Gee Simmons.

2. Plaintiff's motion identifies this date as November 21, 2001.

Gee Simmons was living with her two minor children and her husband, Dwayne Gee, in the City of Inkster, Michigan, but had a personal protection order (PPO) against her husband and was attempting to separate from him physically. (Compl. at ¶¶ 5, 6.) Shala Gee Simmons told her husband that she was going to church. To ensure her return, Mr. Gee told his wife that he would keep her minor children at the house and would kill them if she did not return. (*Id.* at ¶ 7.) Shala Gee Simmons left the home and went to the Inkster Police Department. She told them that she feared imminent physical harm from her husband if she returned to her home unescorted by the police because her husband had become irrational and violent, possessed at least one handgun, was holding her minor children and had threatened their lives if she did not return, and had previously threatened her life if she attempted to leave him. (*Id.* at ¶ 8.) Officers were dispatched to accompany Shala Gee Simmons to her home.

The officers entered the home with Shala and encountered her husband, Dwayne Gee, who was wearing a jogging jacket with kangaroo-style pockets. His hands were in his pockets. (*Id.* at ¶¶ 9, 10.) The officers did not search Mr. Gee for weapons and did not segregate him in the home to prevent him from having physical contact with his wife. (*Id.* at 11.) While Shala Gee Simmons was on her third trip to the bedroom to retrieve a bag of personal belongings, her husband, in plain view of the officers, walked down the hallway and into the bedroom where his wife was located, drew a .380 revolver, which he had in his possession since the officers had arrived, and fired a single shot killing his wife. He then turned the weapon on himself, killing himself as well. (*Id.* at ¶ 12.)

Plaintiff brings this § 1983 action asserting municipal liability against the City of Inkster and alleging that the City's training and supervision of its officers was so grossly inadequate that it constitutes deliberate indifference to Shala Gee Simmons' Fourth and Fourteenth Amendment rights. Specifically, the complaint alleges that the City failed to properly train and supervise its officers in the handling of domestic violence situations and allowed the decedent's constitutional rights to be violated when the officers failed to prevent her husband, Dwayne Gee, from killing her in their presence. (*Id.* at ¶¶ 19, 20.)

Plaintiff alleges that the officers violated Shala Gee Simmons' Fourth and Fourteenth Amendment rights by failing to: 1) run a warrant check on Dwayne Gee; 2) establish a plan to secure the scene at the house before or after arrival; 3) have an officer in charge at the scene or failing to get instruction on how to proceed from supervisory officers; 4) observe generally accepted police procedure for handling the situation at the house; 5) request that Dwayne Gee remove his hands from his pockets and to empty his pockets in their presence; 6) make sure that he did not have a weapon in his possession by patting him down or otherwise conducting a search of his person; 8) prevent Dwayne Gee from obtaining access to a firearm while the officers were present in the home; 9) secure or segregate Dwayne Gee in a way that would prohibit him from having physical contact with his wife while she was moving in and out of the house; 10) segregate Dwayne Gee from the minor children in the home despite knowledge that he had threatened to harm or kill them; 11) adequately observe Dwayne Gee and his movements in relation to his wife; and 12) ascertain that Dwayne Gee had physical possession of an illegal weapon and was in violation of probation, and thus should have been arrested. (*Id.* at ¶ 19(a)-(m).) Plaintiff also alleges that Shala Gee Simmons' constitution rights were violated when the officers lulled her into a false

sense of personal security and prevented her from taking steps to protect and preserve her own life. (*Id.* at ¶ 19(n).)

This matter is before the Court on Defendant City's motion to dismiss, arguing that Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983 because she cannot allege a Fourth or Fourteenth Amendment violation. Plaintiff concedes that she cannot state a claim for relief under the Fourth Amendment. (Pl.'s Resp. at 4.) Accordingly, the City's motion as to Plaintiff's Fourth Amendment claims is GRANTED, and all such claims are dismissed. The Court's discussion will focus on Plaintiff's Fourteenth Amendment substantive due process claims.

## II. Motion to Dismiss Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir.1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir.1996).

This standard of review " 'requires more than the bare assertion of legal conclusions.' " *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. Analysis

Plaintiff's § 1983 claim asserts that the City's officers violated Shala's Fourteenth Amendment substantive due process rights when they failed to prevent her husband from killing her, and further asserts that the Defendant City is liable for this constitutional violation because it failed to adequately train and supervise its officers in the handling of domestic violence situations. Because there can be no § 1983 municipal liability as a matter of law absent the finding of a constitutional violation, this Court first addresses the issue whether Shala's substantive due process rights were violated. *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir.2000).

Plaintiff acknowledges the Supreme Court's holding in *DeShaney v. Winnebago Department of Social Services*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Likewise, Plaintiff concedes that the Due Process Clause of the Fourteenth Amendment places limits "on the State's power to act," and does not serve "as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195, 109 S.Ct. 998. Nonetheless, Plaintiff argues, the facts of this case give rise to both the in-custody and state-created-danger exceptions to the rule announced in *DeShaney* and its progeny. Accordingly, Plaintiff seeks to hold the City responsible, under § 1983, for the private act of violence that resulted in Shala's death at the hands of her husband.

This Court finds Plaintiff's arguments unpersuasive. Plaintiff has not and cannot allege facts that fit either the in-custody or

state-created-danger exceptions to *DeShaney*, and thus Defendant's Rule 12(b)(6) motion is GRANTED in its entirety.

The Sixth Circuit recognizes two exceptions to the general rule stated in *DeShaney*. *Cartwright v. City of Marine City*, 336 F.3d 487, 491 (6th Cir.2003). The first recognizes that "an injury suffered in state custody" is "constitutionally cognizable." *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir.2003). The second recognizes a substantive due process violation when "affirmative acts by the state ... either create or increase the risk that an individual will be exposed to private acts of violence." *Id.*[3]

### A. In–Custody Exception

Plaintiff argues that her substantive due process claim should be analyzed under the state custody exception to *DeShaney* because, at the time of Shala's death, the City's officers were "in control" of the marital home, of Shala's activities, and of her husband's activities. Moreover, Plaintiff argues, the officers were present at the home for the purpose of protecting her from physical harm by her husband, who was the subject of an existing personal protection order ("PPO").

In *DeShaney*, the Court carved out a narrow custodial exception to the general "no duty to protect from private harm" rule. The exception applies:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.... In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 200, 109 S.Ct. 998 (citations and footnote omitted).

■ The City officers did not take Shala into custody or restrain her freedom to act on her own behalf. Rather, the officers, at Shala's request, accompanied her to her home so that she could pack her belongings and leave. The Sixth Circuit defines "custody" as "the 'intentional application of physical force and show of authority made with the intent of acquiring physical control.'" *Cartwright*, 336 F.3d at 491–92

---

**3.** As the Sixth Circuit recently observed, in *DeShaney*, "[t]he Court recognized ... that if a state has created a 'special relationship' with the victimized individual, then the state may have an affirmative duty to protect that individual. Such a 'special relationship' exists, for example, where the state has some sort of control or custody over the individual, as in the case of prisoners, involuntarily committed mentally ill persons, or foster children.... A number of circuit courts—including the Sixth Circuit—have relied on this passage in *DeShaney* to acknowledge that liability may exist where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Sheets v. Mullins*, 287 F.3d 581, 587 (6th Cir.2002) (citing *De-*

*Shaney*, 489 U.S. at 201, 109 S.Ct. 998, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998), and *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994)). To summarize, the Sixth Circuit recognizes an exception to the *DeShaney* rule when the state creates a "special relationship" by either (1) placing the victimized individual in state custody, or (2) by creating a dangerous situation or rendering the victimized individual more vulnerable to danger.

Because Plaintiff's § 1983 action alleges a violation under the Fourteenth Amendment, its reliance on Michigan's public duty doctrine and Michigan's test for determining when a special relationship exists is misplaced.

(quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir.2002)). The facts of this case do not fit that definition.

Moreover, despite Plaintiff's arguments to the contrary, the custodial exception does not apply merely because the City officers were aware of Shala's predicament or from their intent to help her. As the *DeShaney* Court observed, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on [the individual's] freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200, 109 S.Ct. 998.

## B. State–Created Danger Exception

█ Plaintiff also argues that the state-created danger exception to *DeShaney* applies under the facts of this case. Specifically, Plaintiff contends that the officers "enhanced the danger" Shala faced because they "lulled [her] into a totally false sense of security by their presence at the scene." Plaintiff further contends that Shala would never have gone to her home to remove her personal property and her children without police protection. (Pl.'s Resp. at 7.)

To show a state-created danger, the Sixth Circuit requires Plaintiff to show:

1) an affirmative act by the state which either created or increased the risk that the plaintiff [was] exposed to . . . ; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright*, 336 F.3d at 493.

As to the first element, Plaintiff does not complain about the police officers' affirmative acts. Rather, she complains about their failure to: 2) run a warrant check on Dwayne Gee; 1) establish a plan to secure the scene at the house before or after arrival; 3) ascertain that Dwayne Gee had physical possession of an illegal weapon, was in violation of probation, and should be arrested; and 4) secure or segregate Dwayne Gee in a way that would prohibit him from having physical contact with his wife while she was moving in and out of the house. (Compl. at ¶ 19(a)-(m).) The Sixth Circuit has observed that a "failure to act is not an affirmative act under the state-created danger theory." *Id.* Because her substantive due process claim is based on the Inkster police officers' alleged failure to act, Plaintiff has failed to state a claim that fits under the state-created danger exception to *DeShaney*. *See Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912–13 (6th Cir.1995) (finding that the plaintiff's allegations that the defendants failed to provide bus drivers with a plan or policy to manage medical emergencies on their buses and failing to communicate the decedent's medical condition to her school bus driver did not state "*affirmative* action that exposed decedent to any danger to which she was not already exposed" and thus there was "no state-created danger"); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994) (rejecting arguments that the defendants' failure to rescue a kidnap victim and the defendant police officer's decision not to investigate the car wash where the victim was last seen or her bank account and then lying about it made the victim more vulnerable to danger than she would otherwise have been, and finding that the defendants "did not 'create the danger' in which the victim found herself").

Plaintiff's additional argument, that the officers' presence at Shala's home enhanced the danger she faced because they lulled her into a false sense of security, is to no avail. In a case with similar facts, the Sixth Circuit recently rejected the argument that the state-created danger ex-

ception to *DeShaney* applies "because the officers came to [the victim's] home, thereby imparting a false sense of security." *Perry v. Wildes*, 149 F.3d 1184, 1998 WL 322651, *3 (6th Cir.1998) (per curiam). "The question is not whether the victim was safer *during* the state action, but whether [she] was safer *before* the state action than [she] was *after* it." *Cartwright*, 336 F.3d at 493. Plaintiff has not and cannot allege that Shala was safer before the police accompanied her to her home than she was after they did so. The *Perry* case illustrates this point.

In *Perry*, the plaintiffs' decedent was murdered by her former boyfriend. The police had issued a warrant for the boyfriend's arrest for kidnaping the victim a month earlier. The officers knew the ex-boyfriend had been sighted near the victim's home and that he had said he would kill himself before he would go to jail. Two police officers went to the decedent's home, explained that they could not arrest the ex-boyfriend that night because of the lack of manpower, and stayed on the front porch "for some time" waiting for him but he did not appear. *Id.* 149 F.3d 1184, 1998 WL 322651 at *2. Shortly after they left, he arrived and fatally shot his ex-girlfriend and then killed himself. *Id.* The plaintiffs claimed that "they abandoned their plans to either flee to a relative in Salem, Ohio, or to arm themselves because the officers came to their home, thereby imparting a false sense of security." *Id.* In rejecting the plaintiffs' contention that the officers created a "special danger," the Sixth Circuit held:

> [I]t is clear that [the defendant police officer] did not place any physical restraint on [the victim]'s "freedom to act on her own behalf," or the freedom of anyone else to act on her behalf. She remained free to leave her parents' home.... Finally, we are unwilling to say that police response to a citizen's call for assistance subjects the officers

to potential liability for creating a "special danger" premised upon a heightened sense of security.

*Id.* 149 F.3d 1184, 1998 WL 322651 at *3.

Similar to the plaintiffs in *Perry*, Plaintiff here has not and cannot allege facts showing that the state-created danger exception to *DeShaney* applies. The police officers did not place any physical restraint on Shala's freedom to act on her own behalf, and they did not make her any less safe than she was before they accompanied her to her home.

### C. Municipal Liability

The Defendant City can only be held liable under § 1983 if Plaintiff can show that its police officers violated Shala's constitutional rights. Because Plaintiff has not and cannot satisfy this requirement, Plaintiff's claims against the City must be dismissed. *Cartwright*, 336 F.3d. at 495.

### IV. Conclusion

For the above-stated reasons, Defendant's motion to dismiss is GRANTED.