NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0641n.06

No. 12-6025

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| YOLANDA CHIGANO and MICHAEL CHIGANO, | ) ) ) | **FILED** *Jul 10, 2013* DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| CITY OF KNOXVILLE; STERLING OWEN, IV; KNOXVILLE COUNTY, TENNESSEE; CHARLES Q. LINDSEY; TIM RIDDLE, | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| Defendants, | ) ) | |
| KITTY HATCHER and ROBERTA BIANUCCI, | ) ) ) | |
| Defendants-Appellees. | ) | |

Before: CLAY and COOK, Circuit Judges; OLIVER, District Judge.[*]

OLIVER, District Judge. Plaintiffs-Appellants, Yolanda and Michael Chigano (collectively, "Plaintiffs"), appeal the order of the district court granting summary judgment in favor of Defendants-Appellees Kitty Hatcher ("Hatcher") and Roberta Bianucci ("Bianucci"). For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

This case arises from events that occurred on January 31, 2007, at Fulton High School ("Fulton"). M.C., Plaintiffs' then minor daughter, was a sophomore special education student with autism in Bianucci's class. Bianucci, in alignment with school policy, had a rule that cell phones must be turned off and not visible during the school day. The school policy indicated that, upon the first violation of this policy by a student, the cell phone would be confiscated and must be picked up by the parent or legal guardian from the front office.

On the day in question, M.C. had her cell phone out at multiple times during the morning. Bianucci stated that she asked M.C. several times to put her cell phone away. Eventually, Bianucci confiscated the phone and placed it in her teaching assistant's desk drawer. M.C. attempted to retrieve her cell phone from the teaching assistant's drawer after lunch. As a result, Bianucci took M.C.'s cell phone to the front office. M.C. followed Bianucci to the office asserting repeatedly that she wanted her phone. Bianucci gave the phone to the secretary who placed it in a drawer.

After the school day ended, M.C. returned to the front office in an effort to retrieve her phone. Bianucci accompanied her. M.C. arrived at the office and spoke to the principal, Hatcher, asking for the return of her phone. Hatcher refused to return the cell phone and informed M.C. that it would only be released to her parents. Shortly thereafter, Tracey Fields, M.C.'s sister, entered the office to take M.C. home, but M.C. refused to leave without her cell phone.

Two school security officers entered the office and tried to talk M.C. into leaving the office. A few minutes later Knoxville Police Department Officer Tim Riddle ("Officer Riddle") entered. He also attempted to get M.C. to leave of her own volition, but M.C. was uncooperative. Thereafter, Officer Riddle and M.C. engaged in a struggle as he attempted to remove her from the office. The

two security officers assisted Officer Riddle with handcuffing M.C. and escorting her to Officer Riddle's police vehicle. Part of the confrontation was captured on video.

M.C. was transported to a juvenile detention center where she was charged with disorderly conduct and resisting arrest. She was then released to the custody of her parents. Later, the charges were dropped. At some point, Officer Riddle informed M.C.'s mother that had he known that M.C. was a special needs or autistic child, he would not have taken her to the juvenile detention center.

Plaintiffs filed a lawsuit individually and on behalf of M.C., alleging violations of M.C.'s constitutional rights pursuant to 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964. They also alleged violations of state law. These claims were asserted against Hatcher, Bianucci, Officer Riddle, and others not relevant to this appeal.[1] Hatcher, Bianucci, and Officer Riddle filed motions for summary judgment, which the district court granted on all of the federal law claims while dismissing the remaining state law claims without prejudice.

The district court determined that the Complaint alleged two federal causes of action: (1) a race-based claim for violation of Title VI of the Civil Rights Act; and (2) a claim pursuant to 42 U.S.C. § 1983. The district court determined that there was no evidence that M.C. was treated differently than any other student due to her race and entered summary judgment in favor of each Defendant on the Title VI claim. Plaintiffs did not appeal this decision.

Plaintiffs asserted claims under 42 U.S.C. § 1983 for constitutional deprivations of her Fourth, Eighth, and Fourteenth Amendment rights, based on the fact that neither Hatcher nor

---

[1] Plaintiff also asserted claims against the City of Knoxville, Chief of Police Sterling Owen, IV, Knox County, and Former Superintendent Charles Q. Lindsey ("Lindsey"), all of whom were voluntarily dismissed or had summary judgment granted in their favor.

Bianucci informed Officer Riddle that M.C. was autistic. The district court determined there had been no violation of these provisions of the Constitution. First, the court found that the Eighth Amendment did not apply because its protections do not attach until after conviction and sentencing, which did not occur. Next, the court examined the remaining claims against Bianucci and Hatcher and held that a reasonable jury could not find that Bianucci or Hatcher violated M.C.'s constitutional rights under the Fourth or Fourteenth Amendment. The court found that M.C. did not allege that Bianucci or Hatcher used force against her. Therefore, there could be no recovery against them for a claim of excessive force. It also found that:

> At most, M.C. claims that Ms. Bianucci and Ms. Hatcher failed to adequately relay information about M.C.'s disability to Officer Riddle, and that, as a result, M.C. was not treated with respect and dignity. The Plaintiffs have not cited any case holding that the failure to communicate information about a person's disability to an arresting officer is a violation of the Constitution.

(R. at 758). Thereafter, the court determined that it was undisputed that Bianucci and Hatcher confiscated M.C.'s phone and held it in the school office pursuant to Fulton's cell phone policy and that their enforcement of the cell phone policy did not amount to a constitutional violation. Because each of Plaintiffs' federal claims failed, the district court declined to exercise supplemental jurisdiction over the state law claims and dismissed such claims without prejudice. On appeal, Plaintiffs only challenge the district court's finding with respect to the Fourteenth Amendment claim.[2] Thus, the only issue is whether the district court's order granting summary judgment in favor

---

[2] Plaintiffs initially sought to challenge the district court's decision granting summary judgment in favor of Officer Riddle in regard to the § 1983 claim. Subsequently, the Plaintiffs filed a stipulation of dismissal with prejudice with respect to their claim against Officer Riddle.

of Hatcher and Bianucci with respect to the § 1983 claim for the alleged violation of M.C.'s Fourteenth Amendment rights was proper.

## II. ANALYSIS

An order granting summary judgment is subject to *de novo* review. *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 385 (6th Cir. 2001).

Plaintiffs argue that the district court erred in granting Hatcher and Bianucci's motion for summary judgment because Hatcher's and Bianucci's actions deprived M.C. of her Fourteenth Amendment liberty interest in bodily security in violation of the substantive component of the Due Process Clause. They maintain that Hatcher and Bianucci's summoning of the police to the front office to assist with M.C. and their failure to inform Officer Riddle that M.C. was autistic prior to his interaction with her created, then increased, the danger to which M.C. was exposed. They further argue that Hatcher and Bianucci's actions caused M.C. to be physically and emotionally injured by the school security officers and Officer Riddle. In making these arguments on appeal, they rely on the state-created danger doctrine that courts have derived from *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).

Hatcher and Bianucci contend that Plaintiffs never presented this legal theory to the district court and that the district court did not consider such theory when dismissing the claims brought against them; thus, Plaintiffs may not raise it on appeal. They further contend that even if the court finds the issue was properly raised on appeal, the district court must still be affirmed.

Based on the district court's determination that Plaintiffs did not cite any case holding that a failure to communicate information about a person's disability to an arresting officer is a violation of the Constitution, it is apparent that Plaintiffs' *DeShaney* analysis, raised here, was not fully developed below. Thus, Hatcher and Bianucci are correct in arguing that Plaintiffs neither cited nor clearly articulated that their legal theory relied upon *DeShaney* or its progeny. However, because it can be argued that the court, in granting summary judgment in favor of Defendants, rejected such a theory when it said that "[t]he Plaintiffs have not cited any case holding that the failure to communicate information about a person's disability to an arresting officer is a violation of the Constitution," the court will address the issue raised by Plaintiffs on appeal.

## A. Constitutional Violation

To establish a § 1983 claim, the plaintiff must show "that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358–59 (6th Cir. 2001). Because Hatcher and Bianucci raised a qualified immunity defense, Plaintiffs must first show that Hatcher and Bianucci violated one of M.C.'s constitutional rights and that such right was clearly established. *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006).

As discussed above, Plaintiffs specifically allege that Hatcher and Bianucci violated M.C.'s Fourteenth Amendment right to substantive due process. The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It "bars certain arbitrary, wrongful [State]

6

government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

While the Due Process Clause prohibits the State from depriving any person of life or liberty, it does not affirmatively require the State to protect the life and liberty of its citizens against actions by private actors. *DeShaney*, 489 U.S. at 194–95. In *DeShaney*, the Supreme Court recognized that "[a]s a general matter . . . a State's failure to protect an individual against private violence [] does not constitute a violation of the Due Process Clause." 489 U.S. at 197. Only when the State affirmatively acts in a manner to restrain a persons's freedom to act on her own behalf does a deprivation of liberty arise that triggers the protections of the Due Process Clause. *Id.* at 200. Accordingly, the court explained that under the Due Process Clause, a State may have an affirmative duty to protect a person against violence by private actors if a special relationship exists between the State and the person, such as when the person is in actual or constructive custody of the State. *Id.* at 199–200. Using this principle, the court determined in *DeShaney* that even though the Respondent, a state government social services agency, failed to intervene and prevent the DeShaney child from being abused by his father, despite their knowledge that his father might be abusing him, such failure to intervene did not violate the Due Process Clause.

The Court also stated that, "[w]hile the State may have been aware of the dangers that [the DeShaney child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201. This court has interpreted this phrase to create another exception to the state's non-liability for acts of violence by private actors, the state-created danger theory of liability. *Jones v. Reynolds*, 438 F.3d at 690. If the state actor created or increased

7

the danger to its citizen through its own affirmative acts, a duty to protect the citizen arises. *Id.* However, Plaintiffs argue that Hatcher and Bianucci's failure to inform Officer Riddle that M.C. was autistic deprived her of her liberty interest in bodily security. Generally, as indicated above, the failure to protect a person from violence at the hands of a third party is not a constitutional violation.

Plaintiffs argue that their case is an exception to the *DeShaney* rule and that Hatcher and Bianucci are liable for injuries to M.C. under a state-created danger theory. As explained above, while the Due Process Clause prohibits the State from depriving any person of life or liberty, it does not explicitly require the State to protect the life and liberty of its citizens against actions by private actors.[3] *DeShaney*, 489 U.S. at 194–95. Courts have recognized two exceptions to this general rule. The State may be held liable for failing to protect a citizen if the citizen was in the functional custody of the State when the injury occurred or the State actor created or increased the danger to the citizen. *Jones v. Reynolds*, 438 F.3d at 690 (acknowledging the exceptions, but finding that on-duty police officers who arrived at an illegal drag race before it began and expressly permitted the participants to proceed with the race were not liable for creating or increasing the danger to the spectator who was hit and killed by the vehicle of participant who lost control while driving). Plaintiffs do not argue that M.C. was in the functional custody of the State. Instead, they argue that Hatcher and Bianucci created or increased the danger to M.C. To establish a constitutional violation under the Fourteenth Amendment under a state-created danger theory, the plaintiff must show:

---

[3] The court notes that it is arguable that *DeShaney* would be inapplicable because the actor causing the violence on these facts is not a private actor, but a state police officer with his own set of obligations and privileges that permit him to lawfully engage in acts that may be considered acts of violence if undertaken by a private citizen. For purposes of this appeal only, the court assumes that a police officer would be treated the same as a private actor under the *DeShaney* analysis.

(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its action specifically endangered the plaintiff.

*Id.*

Plaintiffs argue that Hatcher and Bianucci created the risk of danger to M.C. by summoning Officer Riddle to the front office. However, the facts do not indicate that Hatcher or Bianucci called or directed someone else to call Officer Riddle to the front office to remove M.C. The secretary alerted the regular school resource officer of what was happening in the front office after he called to discuss another matter, and he sent Officer Riddle to handle the situation. Therefore, if the summoning of Officer Riddle is the precipitating factor that created the risk that M.C. would be exposed to an act of violence, then Plaintiffs cannot show that an affirmative act by Hatcher or Bianucci created the risk to M.C.

Plaintiffs argue in their brief that Hatcher and Bianucci increased the risk of danger to M.C. by failing to inform Officer Riddle that M.C. was autistic. However, at oral argument, counsel for Plaintiffs stated the he was not arguing the case under a failure to act theory. Nonetheless, such argument would fail because, while the facts indicate that Hatcher and Bianucci did not inform Officer Riddle that M.C. was autistic, for purposes of the state-created danger theory, a failure to act is not an affirmative act. *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003); *see also Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1995) (holding that school officials' failure to communicate a student's medical condition to her school bus driver was not an affirmative act exposing the plaintiff to danger under the state-created danger theory, where the student suffered

from a seizure disorder and a heart condition and the bus driver, thinking the student was having a seizure, did not seek immediate medical attention); *Koulta v. Merciez*, 477 F.3d 442, 445–46 (6th Cir. 2007) (finding that the police officers' failure to determine the level of intoxication of a driver who informed them that she had drunk a 40-ounce bottle of malt liquor before permitting the driver to drive was not an affirmative act exposing the person that the driver subsequently killed in a car accident to danger). Therefore, Plaintiffs cannot show that an affirmative act by Hatcher or Bianucci created or increased the risk to M.C. Thus, Plaintiff also cannot show any affirmative act by Hatcher or Bianucci that created a special risk to M.C. that they knew or should have known endangered her. Consequently, the court finds that there was no deprivation of M.C.'s liberty, and thus no constitutional violation. In so finding, the court is not called upon to determine whether it would have been better if, during these rapidly unfolding events, Hatcher and Bianucci had thought to inform Officer Riddle that M.C. was autistic, only whether M.C.'s constitutional rights were violated.

## B. Clearly Established Right

The court need not determine whether the constitutional right asserted was clearly established because there was no finding of a constitutional violation.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's granting of summary judgment in favor of Hatcher and Bianucci.