NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0409n.06

Case Nos. 13-3935, 13-4075

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jun 06, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALEX LEFEVER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| VIRGINIA LEFEVER, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Plaintiff-Appellee / Cross-Appellant, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| v. | ) | |
| | ) | |
| JAMES FERGUSON, | ) | |
| | ) | |
| Defendant-Appellant / Cross-Appellee, | ) | |
| | ) | |
| KEN BALLANTINE, City of Newark Ohio, | ) | |
| Division of Police, BILL HATFIELD, and | ) | |
| ROBERT RAKER, MD, FAAFS, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: MERRITT, COOK, and STRANCH, Circuit Judges

COOK, Circuit Judge. More than twenty years after convicting Virginia LeFever of murdering her husband, an Ohio court granted a new trial upon learning that the chief toxicologist whose forensic testimony implicated LeFever pleaded no contest to falsification charges for lying about his academic credentials. Since then, county authorities released LeFever from custody and dismissed the underlying indictment without prejudice. LeFever filed

this action under 42 U.S.C. § 1983 against the dissembling toxicologist, James Ferguson, other county officials, and municipal entities, alleging concealment of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), fabrication of evidence, conspiracy, and state law claims for intentional infliction of emotional distress (IIED), malicious prosecution, and false imprisonment. These interlocutory cross-appeals concern only LeFever's fabrication and *Brady* claims against Ferguson and his absolute and qualified immunity defenses.

The district court denied absolute immunity on all federal claims, granted qualified immunity on the concealment claims, and denied qualified immunity on the federal fabrication claim. The court also denied state statutory immunity and dismissed all the state-law claims except IIED, which it construed as relying on the same fabrication-of-evidence theory. Ferguson appeals the denial of summary judgment on the fabrication claim. LeFever, with the certification of the district court, cross-appeals the grant of qualified immunity on the concealment claims. Ferguson, joined by codefendent/amicus Dr. Robert Raker, opposes the district court's certification of the concealment claims.

For the following reasons, in Ferguson's appeal (13-3935), we REVERSE the district court's denial of summary judgment on the fabrication claim on absolute immunity grounds. We also DISMISS LeFever's cross-appeal (13-4075) as improperly certified.

I.

The district court's opinion thoroughly details the State's case against LeFever and Ferguson's role therein. We offer this brief synopsis for context.

A. *The Investigation, Murder Trial, and Grant of New Trial*

LeFever's estranged husband William died a week before their final divorce hearing in 1988, following his overnight dinner visit to their family home. William displayed increasingly

erratic behavior during the evening and into the following day. The family called the paramedics after LeFever discovered several pills missing from an old antidepressant prescription. Before he died of cardio-pulmonary arrest, William purportedly admitted to a nurse that he took the pills in a suicide attempt, but another nurse claimed that he said LeFever force-fed the pills to him.

The Licking County Coroner's Office, led by Dr. Raker, investigated the overdose and, upon finding numerous bruises on the body, ordered a forensic autopsy. Franklin County's chief toxicologist James Ferguson performed forensic tests on tissues obtained during the autopsy conducted by pathologist Patrick Fardal. The autopsy report concluded that William died from exposure to amitriptyline (a key ingredient in the antidepressant) and nortriptyline (a toxic amitriptyline metabolite). Additional tests detected amitriptyline in William's lower colon and in an intramuscular injection site on his buttocks.

The Newark Police Department found evidence indicative of foul play. During a search of LeFever's home, they discovered the following items in the kitchen trash: hypodermic needles, syringes, rodent-killing poison peanuts and sunflower seeds, and charred remains from "Smoke'em" fumigation pesticides. Interviews with LeFever's children revealed that, on the night of William's visit, LeFever lit a "Smoke'ems" in a bedroom while William slept and then left with the children. Another witness reported an unusual telephone call two days before William's death in which LeFever joked about finding a hitman and mentioned William's $20,000 life insurance policy.

Relying on the physical evidence, witness statements, and autopsy reports, the Licking County Prosecutor submitted the matter to a grand jury; the indictment issued in November 1988. Before LeFever's murder trial, however, Ferguson and Franklin County's director of forensic toxicology, Dr. Daniel Couri, issued a supplemental toxicology report in January of

- 3 -

1989 ("supplemental report") noting the presence of arsenic (an ingredient in ant-killing products) and inorganic sulfates (an ingredient in "Smoke'em" pesticides) as contributing causes of William's death. (*See* R. 95-1, Ferguson Aff. Ex. F, 1/12/89 Suppl. Toxicology Report at 1–3.) Ultimately, the supplemental report concluded that William "died as a consequence of multiple administration of toxic agents," with amitriptyline poisoning as the "immediate cause." (*Id.* at 4.)

Though the supplemental report stated that the toxicologists detected arsenic throughout William's body, including his hair, nails, and multiple organs, a different finding takes center stage here: the report's assessment of "very high arsenic levels in the dried feces," which, combined with "the lack of any pathologic sign of gastric erosion . . . consistent with an oral dose, lead . . . to the conclusion that the arsenic may also have been administered rectally." (*Id.* at 3.) Ferguson expanded upon this hypothesis during LeFever's murder trial, testifying to a "reasonable scientific certainty" that the arsenic was rectally administered. (*See* Appellee Br. at 21; R. 87-2, Trial Tr. at 24.)

Following a bench trial in February and March of 1990, the court convicted LeFever of murder. She spent more than twenty years in prison until revelations about Ferguson's misrepresented credentials[1] led the trial court to order a new trial in November 2010. In granting the new trial, the court expressed doubts about LeFever's innocence, but concluded that Ferguson's testimony tainted the trial.

---

[1]Ferguson testified in numerous cases (including this one) that he received his degree from The Ohio State University in 1972, when in fact poor grades prevented him from completing his degree until 1987.

*B. LeFever's § 1983 Complaint & Procedural History*

LeFever, who maintains her innocence, filed this action under § 1983 and state law claiming that Ferguson and others fabricated evidence and withheld exculpatory evidence. Apart from the misrepresented credentials, LeFever discovered two additional reasons to doubt Ferguson's testimony. First, at some point during the investigation of William's death, Ferguson wrote a 26-page manuscript about the case, titled "Angel of Mercy or Angel of Death?" Characterizing it as a sensationalized "dime-store novel," LeFever contends that it "contains false insinuations" that she killed William and three relatives. Second, during a deposition in 2012, Ferguson recanted his trial testimony about the rectal administration of arsenic.

Ferguson moved for summary judgment on the grounds of absolute testimonial immunity and qualified immunity. Because it construed LeFever's claims as encompassing Ferguson's pretrial conduct, and not his trial testimony, the district court rejected Ferguson's absolute immunity defense and proceeded to a qualified immunity analysis. *See Gregory v. City of Louisville*, 444 F.3d 725, 738–39 (6th Cir. 2006) (explaining that absolute immunity does not reach pretrial conduct). The court then segregated LeFever's concealment claims—Ferguson's misrepresented credentials and the dime-store novel—from the fabrication claim, holding that the concealment claims derived from *Brady*'s requirement that the prosecution disclose material exculpatory evidence. *See Brady*, 373 U.S. at 87. Though acknowledging our precedent extending the clearly-established date for forensic examiners' *Brady*-derived disclosure obligation to "at least as early as April or May of 1990," *Moldowan v. City of Warren*, 578 F.3d 351, 397 (6th Cir. 2009), the district court granted qualified immunity to Ferguson on the concealment claims, concluding that the principle was not clearly established at the time of LeFever's trial two months earlier.

The court denied qualified immunity on the fabrication claim, however, finding a genuine issue of fact regarding whether Ferguson concocted the arsenic-administration theory. According to the district court, a reasonable juror could view Ferguson's 2012 deposition as admitting that he made up that part of his 1990 trial testimony.

Ferguson appealed the denial of summary judgment on the fabrication claim, and LeFever, wishing to cross-appeal the grant of qualified immunity on the *Brady* claims, moved for certification under Federal Rule of Civil Procedure 54(b). Without waiting for Ferguson's opposition brief, the district court certified the *Brady* claims, and LeFever filed the cross-appeal. After Ferguson alerted the court to the premature certification ruling and filed opposition, the district court issued an order finding that LeFever's cross-appeal divested it of jurisdiction to reconsider the issue. The court expressed its continuing belief in certification, but found the matter "closer . . . than the Court previously deemed it."

## II.

### A. Ferguson's Appeal

Though Ferguson devotes much of his argument to LeFever's failure to plead this fabrication claim in her amended complaint, we limit our interlocutory review to the immunity defenses decided by the district court. *See Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) ("An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim."). We exercise interlocutory jurisdiction over the denial of absolute and qualified immunity "to the extent that it turns on an issue of law." *Id.* at 530; *see also Leech v. DeWeese*, 689 F.3d 538, 541 (6th Cir. 2012). Like most legal questions, we review the matter de novo. *Gregory*, 444 F.3d at 737.

Absolute immunity shields all testimony given in judicial proceedings, including perjured testimony. *See Briscoe v. LaHue*, 460 U.S. 325, 329–31, 341–45 (1983); *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999). Deeply rooted in common law, testimonial immunity protects the integrity of the trial process by preventing witnesses from self-censorship out of fear of future liability. *Briscoe*, 460 U.S. at 333. But it offers no protection to pretrial conduct, including the fabrication of evidence later adopted in trial testimony; that receives only qualified-immunity protection. *Gregory*, 444 F.3d at 738–39.

The district court rejected Ferguson's absolute-immunity defense because LeFever purported to target pretrial conduct, but it failed to consider separately the immunity's application to the fabrication claim. Importantly, the court identified only one piece of evidence demonstrating fabrication: the 2012 deposition testimony where Ferguson recants his 1990 trial testimony regarding the rectal administration of arsenic. (R. 141, Op. & Order at 20.)[2] Accepting this finding, the alleged fabrication occurred at LeFever's trial. And, as LeFever conceded at oral argument, absolute immunity shields Ferguson's trial testimony as a matter of law. (O.A. at 14:35–40.)

Attempting to demonstrate pretrial fabrication (so as to avoid the absolute immunity bar), LeFever argues that Ferguson advanced the same rectal-administration theory in the 1989 supplemental toxicology report. But the supplemental report states only that "arsenic *may also*

---

[2]As he did before the district court, Ferguson attempts to explain away the inconsistencies between the 2012 deposition and his trial testimony. In a supplemental affidavit, he blames confusion and poor memory for his deposition statements and adheres to his 1990 trial testimony regarding arsenic poisoning. (*See* R. 124-1, Ferguson Suppl. Aff. ¶¶ 25–28.) We cannot settle this factual dispute. For purposes of this appeal, we draw all reasonable inferences in LeFever's favor and accept the district court's conclusion that a fair reading of the 2012 deposition supports LeFever's claim that Ferguson recanted the forensic opinion provided in his trial testimony. *See, e.g.*, *Younes v. Pellerito*, 739 F.3d 885, 888 (6th Cir. 2014).

*have been administered rectally.*"  (R. 95-1, Ferguson Aff. Ex. F, 1/12/89 Suppl. Toxicology Report at 3 (emphasis added).)  Unlike his trial testimony, Ferguson's supplemental report offers no opinion as to the *likely* route of arsenic administration, but recognizes a *possible* route.  The distinction matters when we reexamine what Ferguson's 2012 deposition testimony says:

> Q: You've testified about the two ways to get [arsenic] into his body, one orally and one rectally, did you reach an opinion as to . . . which way was more likely?
>
> A: With respect to arsenic, no.
>
> . . .
>
> Q: . . . just to follow up on some of my questions about arsenic.  Is it the case then that you can't testify to a scientific probability that the arsenic was inserted into Mr. LeFever through his rectum?
>
> A: That's correct.
>
> Q:  And you really can't state to a scientific probability how it got in there?
>
> A:  That's correct.
>
> Q: And did you hold that opinion back in 1988 as well?
>
> A: Yes.
>
> Q: And at the time of Ms. LeFever's trial?
>
> A: Yes.

(R. 91, 2012 Ferguson Dep. at 194, 200.)

These deposition excerpts highlighted by LeFever demonstrate that Ferguson: (1) had no opinion as to whether oral or rectal administration of arsenic was "more likely"; (2) could not "state to a scientific probability how it got in there"; and (3) had the same opinion—i.e., no scientific opinion—at the time of her trial.  Each of these statements, addressing likelihoods and probabilities, calls into question his 1990 trial testimony opining to "a reasonable scientific

certainty" that someone inserted arsenic into William's rectum, but none discredits the supplemental report's conclusion that the "arsenic may . . . have been administered" that way. Tellingly, LeFever offers no evidence contradicting the supplemental report's predicate facts for this hypothesis: "very high arsenic levels in the dried feces," and the absence of "any pathologic sign of gastric erosion . . . consistent with an oral dose." (R. 95-1, Ferguson Aff. Ex. F, 1/12/89 Suppl. Toxicology Report at 3.) Thus, no evidence demonstrates that Ferguson fabricated the rectal-administration-of-arsenic hypothesis as it appeared in the supplemental report. At most, LeFever's highlighted evidence suggests that Ferguson perjured himself by embellishing this arsenic theory in his trial testimony.

Because she offers no evidence of pretrial conduct supporting her fabrication claim, the district court erred in denying Ferguson absolute immunity on this claim. We therefore reverse this aspect of the district court's judgment.[3]

*B. LeFever's Cross-Appeal*

LeFever's cross-appeal challenges the district court's conclusion that qualified immunity shielded Ferguson from her *Brady* claims. Because we agree with Ferguson and amicus that the district court improperly certified the claim, we dismiss the cross-appeal.

Federal Rule of Civil Procedure 54(b) permits a district court to certify a partial judgment for immediate appeal by "direct[ing] entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The partial judgment must still be "final" as to the certified claim or

---

[3]Though Ferguson's appellate brief asks us to dismiss "all claims against him," he offers no specific argument about the state-law version of the fabrication claim (IIED) or applicable state-law immunities. Accordingly, we offer no opinion on that aspect of the district court's judgment.

claims for this court to have appellate jurisdiction under 28 U.S.C. § 1291. *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986). This limited certification process permits courts to "alleviate hardship resulting from unnecessary delay without undermining the historic federal policy against piecemeal appeals." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1027 (6th Cir. 1994) (citations and internal quotation marks omitted).

Two inquiries guide this court's review of the propriety of Rule 54 certification: (1) whether the district court's order constituted a "final" judgment on a separable claim, a legal question reviewed de novo; and (2) whether the district court abused its discretion in finding "no just reason" to delay appeal. *Id.* Here, the certification falters at the second step because the court's premature certification, without the benefit of timely opposition briefing, precluded appropriate consideration of the finality and unjust delay issues.

Courts in this circuit consider the following in determining whether to certify a partial judgment:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Corrosioneering, Inc.*, 807 F.2d at 1283. Generally, we give "substantial deference" to the district court's weighing of unjust-delay factors, recognizing its greater familiarity with a case's procedural posture, *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980), but the district court's failure to consider substantial arguments raised in timely opposition briefing

diminishes the deference owed, *see Corrosioneering, Inc.*, 807 F.2d at 1282–83.  We must "scrutinize the district court's evaluation of such factors . . . so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Curtiss-Wright Corp.*, 446 U.S. at 10. Here, the district court made two erroneous conclusions that render its certification decision unreasonable. *See id.*

Addressing the first factor, the court stated that the dismissed *Brady* claims and surviving fabrication claims involved "the same issue of qualified immunity," and concluded that "it would serve the interests of judicial economy to allow Plaintiff to take an appeal from the decision granting qualified immunity at the same time as Ferguson's appeal from the Court's denial of qualified immunity."  Yet, Ferguson's preserved defenses to the fabrication claim— insufficient pleadings and evidence of fabrication, and absolute immunity—differ from a qualified-immunity analysis; he makes no argument concerning whether the fabrication of incriminating evidence violates clearly established constitutional rights.

Second, speaking to the third and fifth factors, the court concluded that LeFever's cross-appeal would "streamline the appeal process."  Not really, because LeFever maintains similar claims against other defendants, including her *Brady* claim against Dr. Raker, which the district court dismissed using a similar qualified-immunity analysis.  LeFever acknowledges that there "might" be a second appeal on this issue, but blames the situation on Ferguson's interlocutory appeal. (*See* Cross-Appeal Reply Br. at 10–11.)

At bottom, LeFever primarily argues that fairness requires our consideration of her immunity appeal simultaneously with Ferguson's immunity appeal.  The distinct jurisdictional bases for these appeals justify separate timing.  That is, only an interlocutory appeal can preserve the benefits of immunity, as is Ferguson's right. *See Mitchell*, 472 U.S. at 525.  LeFever, on the

other hand, bears the burden of justifying certification under Rule 54(b).  *See, e.g.*, *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993).  The grant of immunity on fewer than all claims generally does not constitute a final, appealable decision.  *E.g.*, *Coe v. Ziegler*, 817 F.2d 29, 30 (6th Cir. 1987) (per curiam).

The district court's premature ruling on the certification motion precluded meaningful review of the certification factors.  That, combined with the admitted possibility of a future appeal on the same qualified immunity issue, persuades us that the district court abused its discretion.  We therefore dismiss LeFever's cross-appeal as improperly certified.

III.

For the above reasons, we REVERSE the district court's denial of summary judgment on the fabrication claim, finding Ferguson entitled to absolute immunity.  We DISMISS LeFever's cross-appeal as improperly certified for interlocutory appeal.