NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0359n.06

No. 20-6002

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JESSICA BAREFIELD, On Behalf of Herself and
as Next of Kin for her Son T.H., Deceased, and as
Next Friend for Her Children J.B., F.D., and T.B.;
J.B.; F.D.; T.B.,

      Plaintiffs-Appellees,

v.

JACQUELINE HILLMAN; BEVERLEY
NORMANT,

      Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 21, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

---

**BEFORE: GIBBONS, WHITE, and READLER, Circuit Judges.**

      **HELENE N. WHITE, Circuit Judge.** Defendants-Appellants Jacqueline Hillman and Beverley Normant appeal the denial of qualified immunity on Plaintiff Jessica Barefield's[1] "state-created-danger" substantive-due-process claim. Because Barefield failed to allege a viable claim under the state-created-danger doctrine, Hillman and Normant are entitled to qualified immunity. Accordingly, we **REVERSE** the district court's denial of qualified immunity on Claim IV and **REMAND** for further proceedings.

**I.**

      T.H., a minor, had a history of running away from home and associating with gang members. In October 2016, he was adjudicated delinquent by the Davidson County Juvenile Court

---

[1] Barefield brings this action on behalf of herself and her deceased son and three of his surviving siblings. They are referred to collectively as "Barefield" hereafter.

and placed into the custody of the Tennessee Department of Children's Services (DCS). Hillman and Normant are employees of DCS, and for purposes of this appeal, they do not contest that they had knowledge of T.H.'s predilection for running away and for associating with gang members.

DCS first placed T.H. in a traditional foster home, but he quickly ran away. They moved him to a second foster home, but he ran from that home as well. DCS then moved him to the Volunteer Youth Academy (VYA), a more secure facility with heavy, locked doors designed to make it more difficult to escape. Under DCS's classification system, VYA is considered a "Level 3" facility because of its enhanced security; a traditional foster home is considered a "Level 1" facility. On April 10, 2017, T.H. escaped from the VYA. A week later, his mother, Plaintiff Jessica Barefield, located him and called the police. Police took T.H. back into state custody.

DCS was unable to immediately return T.H. to the VYA because his place had been taken by another youth and the VYA was at capacity. Until a spot opened at another Level 3 facility, DCS placed T.H. in a traditional foster home run by David Welbeck. T.H. remained with Welbeck until May 17, 2017, when two DCS workers came to move T.H. to Deer Valley Residential Treatment Facility. When the DCS workers explained to T.H. that they were there to move him from Welbeck's home to the Deer Valley facility, T.H. objected and ran away.

On June 9, 2017, T.H. was found shot to death. Barefield alleges the cause was gang violence.

Barefield filed suit against four DCS employees, including Hillman and Normant, alleging four claims: (I) violation of substantive due process by failing to protect T.H. while in state custody, under 42 U.S.C. § 1983; (II) violation of procedural due process, under § 1983; (III) violation of the Adoption Assistance and Child Welfare Act (AAA) (codified at 42 U.S.C. §§ 620–629m, 670–679c); and (IV) violation of substantive due process under the state-created-danger

doctrine, under § 1983. The district court granted Hillman's and Normant's motion for summary judgment on the first claim, dismissed the second on a motion to dismiss, and found that genuine issues of fact precluded summary judgment on the third and fourth claims.

Hillman and Normant appeal the denial of qualified immunity on Claim IV only. Reply Br. at 2 n.3.

## II.

We have jurisdiction to review "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). For purposes of this appeal, Hillman and Normant concede Barefield's version of the facts, as they must. *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010).

## III.

Claim IV alleges that Hillman and Normant increased the risk that T.H. would suffer harm at the hands of a third party when T.H. was placed in Welbeck's foster home, a Level 1 facility, instead of a more secure Level 3 facility like the VYA. The district court denied qualified immunity because it found that Barefield alleged a viable substantive-due-process claim under the state-created-danger doctrine, and that the right to be free from state-created danger was clearly established at the time Hillman and Normant placed T.H. in Welbeck's foster home.

We review de novo a district court's denial of a defendant's motion for summary judgment on qualified-immunity grounds. *Rafferty v. Trumbull County*, 915 F.3d 1087, 1093 (6th Cir. 2019). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

As a general principle, the Due Process Clause of the Fourteenth Amendment does not protect against private violence or impose affirmative duties of care on the government to protect against such violence. That is because

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). There are two exceptions to this rule, however. First, as the *DeShaney* Court noted, the state may be liable for third-party harm if the state had a "special relationship" with the victim. *Id.* at 198–200. This kind of relationship exists "when the State takes a person into its custody and holds him there against his will," leaving the individual reliant on the state for "his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety[.]" *Id.* at 199–200 (noting that prisoners and those involuntarily committed to mental-health institutions fall into this category). Second, the state may be liable for third-party harm if an "affirmative act" of the state "either create[s] or increase[s] the risk that an individual will be exposed to private acts of violence." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). To state a claim under this exception, known as the "state-created-danger" doctrine, the plaintiff must show:

> 1) an affirmative act by the state [that] either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Lipman v. Budish*, 974 F.3d 726, 744 (6th Cir. 2020) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)).

Barefield alleged claims under both the "special relationship" and "state-created-danger" exceptions, but only the latter is at issue in this appeal.[2]  And Hillman and Normant have further narrowed the scope of our review by conceding the second and third prongs of the state-created-danger analysis, so we need only address whether an "affirmative act" by Hillman and Normant created or increased the risk that T.H. would be harmed by a third party.  Appellants' Br. at 6.

---

[2] A section of Barefield's brief argues that the district court erred in granting summary judgment to Hillman and Normant on Claim I, alleging a substantive-due-process violation under a "failure to protect" theory, which Barefield argues was a "special relationship" claim.  Appellees' Br. at 9–15.  That claim is not properly before us in this interlocutory appeal.  *Cf. LeFever v. Ferguson*, 567 F. App'x 426, 432–33 (6th Cir. 2014) (observing that only an interlocutory appeal can "preserve the benefits of immunity" and that a grant of immunity on "fewer than all claims generally does not constitute a final, appealable decision").  With certain limited exceptions, we only have jurisdiction over appeals from final decisions of a district court.  28 U.S.C. § 1291.  "A grant of partial summary judgment that does not dispose of all parties and all claims is generally not immediately appealable unless the district court issues a Fed. R. Civ. P. 54(b) certificate."  *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009).  Here, Claim III remains pending before the district court and no Rule 54(b) certificate has been issued on Claim I.  Thus, the district court's grant of summary judgment on Claim I is not a basis on which we can exercise jurisdiction.

During oral argument, Barefield argued that we must address the special-relationship claim because it is inextricably intertwined with the state-created-danger claim.  It is true that under the doctrine of pendent appellate jurisdiction we may at times reach an issue we do not otherwise have jurisdiction to address "if the issue is 'inextricably intertwined' with another issue that the appellate court has the independent jurisdiction to consider."  *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 501 (6th Cir. 2011), abrogated on other grounds by *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) (quoting *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 323 (6th Cir. 2010)).  But "the 'inextricably intertwined' requirement is not meant to be loosely applied as a matter of discretion. . . . A challenge to a nonfinal order . . . will be considered inextricably intertwined with a claim that is independently reviewable if the pendent claim is 'coterminous with, or subsumed in, the claim before the court on interlocutory appeal.'"  *Id.* at 503 (quoting *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 287 (6th Cir. 2010)).  Although Barefield's special-relationship claim shares a factual predicate with the state-created-danger claim, it requires a separate and distinct analysis.  And our ruling on the state-created-danger claim will not affect a later ruling on the special-relationship claim should the district court choose to reconsider the issue on remand or Barefield appeal the district court's final judgment dismissing the claim.  Thus, Claims I and IV are not inextricably intertwined and pendent appellate jurisdiction over the special-relationship claim is not warranted here.

In finding that the state's "affirmative act" of placing T.H. into a Level 1 foster home instead of a Level 3 facility increased the risk that T.H. would be harmed by a third party, the district court analyzed whether T.H. would have been safer at a Level 3 facility than a Level 1 foster home. Under our precedents, this is not the appropriate comparison; rather, the proper comparison is with T.H.'s position before state intervention. This was made clear in *Cartwright v. City of Marine City*. In *Cartwright*, police officers offered a ride to an intoxicated man walking along "a dark, foggy, two-lane highway." 336 F.3d at 493. They dropped him off a few miles down the road in a convenience-store parking lot, where he lingered for a few minutes before leaving and being struck and killed by a car. *Id.* at 490. The plaintiff argued that the officers increased the risk that the decedent would be killed by a motorist when they released him from the safety of the back seat of the patrol car into the convenience store parking lot—a place where, relative to the inside of the patrol car—he was much more likely to be struck by oncoming traffic. *Id.* at 493. We rejected that comparison, explaining that "[t]he question is not whether the victim was safer *during* the state action, but whether he was safer *before* the state action than he was after it." *Id.* So viewed, the officers did not increase the risk that the decedent would be killed because the "officers took plaintiff from a place of great danger: the shoulder of a dark, foggy, two-lane highway. [And t]hey placed him in a place of lesser danger: the parking lot of an open convenience store, where telephones, restrooms, and food and drink were available to him." *Id.*; *see also DeShaney*, 489 U.S. at 201.

Under *Cartwright*, the relevant question is whether T.H. was safer before state intervention than after it—not whether he was safer in one state foster-care placement than another. Thus, the district court should have asked whether T.H. was safer from the risks of gang violence before he was placed into state custody, when he was living with his mother, than when he was living in

Welbeck's foster home. Or, alternatively, whether he was safer when he was at large after escaping the VYA than he was in Welbeck's foster home. Either way, Barefield's claim falls short. Barefield does not argue that T.H. was safer in her custody (or living on the streets while at large) than in state custody, and indeed alleges that when T.H. was living with her, he often "ran away for extended periods of time and associated with gang members." R. 27, PID. 96 (Am. Compl. ¶ 17). Barefield also does not dispute that T.H. was originally placed into state custody because a court found him to be dependent and neglected. Under these facts, no reasonable juror could find that T.H. was safer before he was in state custody or when he was at large after escaping the VYA than he was in Welbeck's Level 1 foster home. [3] Accordingly, there is no genuine issue of fact regarding whether an affirmative act of the state created or increased the risk that T.H. would be harmed by gang violence. [4]

Barefield responds that the state has a heightened duty to prevent harm to foster children, which includes a duty to ensure that they are prevented from doing harm to themselves, and that T.H. was effectively in DCS custody the entire time. Appellees' Br. at 21–22. One of our sister circuits held that the state may be liable for a substantive-due-process violation if it places a child

---

[3] Separately, the district court found that Hillman and Normant made it more likely that T.H. would run away and be harmed by third-party violence when they decided to temporarily place him with Welbeck instead of immediately placing him into a Level 3 facility. The district court reasoned that T.H. was likely to be more comfortable at Welbeck's low-security foster home than a Level 3 facility, which made it more likely that T.H. would decide to run away when DCS officials came to move him from Welbeck's to a less-comfortable Level 3 facility. But this alternative state-created-danger theory fails for the same reasons we have already discussed: if T.H. was free to run away and participate in gang activity when he was in his mother's custody and at large, Hillman and Normant did not make him any less safe when they placed him at Welbeck's foster home, where he was also free to run away.

[4] Because Barefield failed to establish a constitutional violation, we need not address the clearly established prong of the qualified immunity analysis. *Silberstein v. City of Dayton*, 440 F.3d 306, 320 (6th Cir. 2006).

into a foster home that it knows is unable to adequately supervise the child. *Camp v. Gregory*, 67 F.3d 1286 (7th Cir. 1995). But *Camp* analogized the state's duty to ensure a foster parent is capable of adequately supervising a child to the state's duty to ensure a child will not be harmed by state foster parents. *See id.* at 1293–97. And we have held that the well-established line of cases dealing with abusive foster homes falls under the special-relationship exception to *DeShaney* and not the state-created-danger exception. *See Meador v. Cabinet for Hum. Res.*, 902 F.2d 474, 476 (6th Cir. 1990) (state can be liable under special-relationship theory for placing child into abusive foster home); *Lintz v. Skipski*, 25 F.3d 304, 305 (6th Cir. 1994) (same). Barefield's arguments in this regard are therefore not pertinent to a state-created-danger claim.

## IV.

For the reasons set forth above, the district court's denial of qualified immunity on Claim IV is **REVERSED**. This case is **REMANDED** for further proceedings.